UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CRYSTAL JOHNSON,

                                 Plaintiff,

    -v-

THE LONG ISLAND RAILROAD COMPANY,
PENN STATION BOOKS, INC. and PAUJAY
SMOKE SHOP, INC.,

                                 Defendants.

---

Case No. 03-CV-1021(KMK)

OPINION AND ORDER

Appearances:

Frederic M. Gold, Esq.
Sable & Gold
New York, New York
*Counsel for Plaintiff*

Christopher P. Yodice, Esq.
William J. Blumenschein, Esq.
Mary Jennings Mahon, Esq.
LIRR Law Department
Jamaica, New York
*Counsel for Defendant Long Island Railroad Company*

Philip J. Smith, Esq.
Tara P. Mandelbaum, Esq.
Morris, Duffy, Alonso & Faley
New York, New York
*Counsel for Defendants Penn Station
Books, Inc. and Paujay Smoke Shop, Inc.*

KENNETH M. KARAS, District Judge:

      Plaintiff filed this action seeking monetary damages from Defendants Long Island

Railroad Company ("LIRR"), Penn Station Books, Inc. ("PSB"), and Paujay Smoke Shop, Inc.

("PSS"), for injuries she allegedly sustained when she was struck by freight falling from a

moving cart on November 21, 2001, at Pennsylvania Station in New York City.  Plaintiff's first

cause of action alleges that LIRR failed to provide a safe workplace pursuant to the Federal

Employer's Liability Act ("FELA").  45 U.S.C. §§ 51-60.  Plaintiff's second and third causes of

action allege negligence by PSB and PSS, respectively.  Before the Court are all Defendants'

motions for summary judgment.  For the reasons stated herein, the motions are DENIED.

## I.  Background

On November 21, 2001, Plaintiff was at Pennsylvania Station ("Penn Station") in New

York, New York, where she was working as an Assistant Conductor for her employer, Defendant

LIRR.  (Def. LIRR's Stmt. Pursuant to Rule 56.1 ("LIRR's Rule 56.1 Stmt.") ¶ 1; Am. Compl.

¶ 5.)  At all relevant times, LIRR was a "common carrier" engaged in interstate commerce as that

term is defined in FELA.  (LIRR's Rule 56.1 Stmt. ¶ 2; *see also* 45 U.S.C. § 57 (defining

"common carrier").)  Defendants PSB and PSS are vendors that lease retail space located at the

Long Island Railroad level of One Penn Plaza.  (Mandelbaum Reply Decl. ¶ 4; Stanziola Decl.

¶ 2.)

At approximately 2:20 p.m., Plaintiff had a "change" between trains and was walking

from the train platform level of Penn Station to the "trainman's room."[1]  (Johnson Dep. 12:7-22.)

To get to the trainman's room from the Penn Station concourse, LIRR employees had to pass

through one of a set of four adjacent double doors which led into a corridor connecting Penn

Station to One Penn Plaza.  (Johnson Dep. 16:11-20; Maldonado Dep. 18:14-19:6, 27:25-28:4;

LIRR's Rule 56.1 Stmt. Ex. I.)  Because of security concerns in the wake of the September 11

---

[1]Assistant Conductors are required to enter the trainman's room between trains in order to turn in cash and reports, to wait for trains, and to collect change in preparation for the next train. (Johnson Dep. 13:6-11, 85:24-86:4.)

terrorist attacks, the doors connecting the concourse to the corridor were locked and were regularly supervised by a guard.  (Johnson Dep. 17:5-12, 86:5-14.)  Also for reasons of security, only a single set of the four available double doors was in use.  (Johnson Dep. 16:18-20; LIRR Corporate Employee Accident-Injury Report 1.)

As Plaintiff went through the double doors connecting the concourse to the corridor, she noticed two men coming through the same doors in the opposite direction.  (Johnson Dep. 17:16-18:15; Rahman Aff. ¶ 3.)  Plaintiff had never previously seen these men.  (Johnson Dep. 19:7-11.)  The men were pushing a cart containing bundled magazines, which were "stacked very high" and which were not secured to the cart in any way.  (Johnson Dep. 18:18, 93:18-21; Rahman Aff. ¶ 3.)  Plaintiff backed up through the doorway and moved to the side, against the wall, so that the men with the cart would be able to pass.  (Johnson Dep. 17:20-18:3; Rahman Aff. ¶¶ 3-5.)  As the men were passing through the doorway, their cart became stuck on the threshold of the doorway.  (Johnson Dep. 18:4-15; Rahman Aff. ¶ 4.)  In their efforts to free the cart, the two men "yanked" the cart and pushed it "hard."  (Johnson Dep. 18:4-15; Rahman Aff. ¶ 4.)  As a result, several of the bundles, each containing 20 to 25 magazines (Rahman Aff. ¶ 6), fell off of the cart and hit Plaintiff, resulting in her injury.  (Johnson Dep. 18:12-15; Rahman Aff. ¶ 5.)

The security guard on duty at the time was Muhammed Rahman ("Rahman").  (Rahman Aff. ¶ 1.)  Rahman saw the incident take place and recognized the two men who were handling the cart.  (*Id.* ¶ 3.)  In an affidavit submitted on behalf of Plaintiff, he identifies the men as "Shoel Goni" ("Goni") and "Akm-mohi Uddin" ("Uddin").  (*Id.* ¶ 3.)  According to Rahman, when the incident took place, both Goni and Uddin were employed by PSB.  (*Id.*)  PSB denies having

3

employed Goni or Uddin during the relevant period.  (PSB's and PSS's Answer to Am. Compl.

2.)  PSS also denies having employed Goni, but admits that Uddin was its employee when the

incident took place.  (*Id.* at 3.)  However, in a letter to opposing counsel dated March 8, 2005,

counsel for PSB and PSS stated that "Penn Station Books no longer employes [sic] Suhail Ghani

and Mohammed Akin Udin."  (Pl.'s Local Rule 56.1 Stmt. in Opp'n to Def.'s Mot. Ex. 5.)

 None of the Defendants owns, leases, or controls the area where Plaintiff was injured.

(Mandelbaum Aff. ¶ 6; Mahon Aff. ¶ 12.)  Although Plaintiff had regularly seen people moving

freight on carts prior to the incident, she had never previously seen such carts coming through

that door.  (Johnson Dep. 19:12-17.)  Plaintiff is unaware of any previous accidents or complaints

regarding the moving of freight in the area.  (*Id.* at 24:24-25:8.)  However, LIRR was aware that

this doorway was "the only access at the time" for deliveries (Maldonado Dep. 17:20-18:2), and

it was not unusual for vendors to transport freight around the concourse area of One Penn Plaza

using carts.  (*Id.* at 27:11-20.)

## II.  Discussion

### A.  Standard of Review

 Under Federal Rule of Civil Procedure 56(c), "[s]ummary judgment is appropriate when

after viewing all the facts in the record in a light most favorable to the non-moving party, there is

no genuine issue of material fact present, so that 'the moving party is entitled to judgment as a

matter of law.'"  *Forsyth v. Fed'n Employment & Guidance Serv.*, 409 F.3d 565, 569 (2d Cir.

2005) (quoting Fed. R. Civ. P. 56(c)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

(1986).  "Such relief for the moving party may be appropriate after discovery if the non-moving

party cannot prove an 'essential element of her case,' that is, one for which she bears the burden

of proof." *Forsyth*, 409 F.3d at 569 (citing *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004)).

The burden is on the movant to show that there is no genuine factual dispute.  *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).  "In deciding a motion for summary judgment, all ambiguities must be resolved and all reasonable inferences drawn in favor of the party opposing the motion." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir. 2000) (citing *Anderson*, 477 U.S. at 255); *see also Giannullo*, 322 F.3d at 140.  "If the evidence is such that, when viewed in the light most favorable to the nonmoving party, a reasonable fact finder could return a verdict for that party, then a genuine issue of material fact exists, and summary judgment is not warranted."  *Magan v. Lufthansa German Airlines*, 339 F.3d 158, 161 (2d Cir. 2003) (citing *Green Door Realty Corp. v. TIG Ins. Co.*, 329 F.3d 282, 286-87 (2d Cir. 2003)).

However, Fed. R. Civ. P. 56(e) provides that the adverse party "may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Thus, "[o]nce a moving party has made a showing that no material issues of fact are in dispute, mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion."  *Quarles v. Gen. Motors Corp. (Motors Holding Div.)*, 758 F.2d 839, 840 (2d Cir. 1985); *see also Shabazz v. Pico*, 994 F. Supp. 460, 466 (S.D.N.Y. 1998).

5

B.  Defendant Long Island Railroad

    1.  The Federal Employer's Liability Act

FELA provides that "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."  45 U.S.C. § 51.  Pursuant to FELA, a common carrier must provide a "safe workplace."  *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 826 (2d Cir. 1994).  A carrier has failed to provide a safe workplace "if it knew or should have known of a potential hazard in the workplace, yet failed to exercise reasonable care to inform and protect its employees."  *Williams v. Long Island R.R.*, 196 F.3d 402, 406 (2d Cir. 1999) (internal quotations omitted).  "Reasonable care is determined in light of whether or not a particular danger was foreseeable."  *Syverson*, 19 F.3d at 826.

FELA is not a strict liability statute.  *See Williams*, 196 F.3d at 406.  However, to survive a motion for summary judgment, a plaintiff need not make the standard showing of negligence required under the common law.  *See Lindauer v. N.Y. Cent. R.R.*, 408 F.2d 638, 640 (2d Cir. 1969) ("Although mere injury to an employee is not in itself proof of the Railroad's negligence, it is clear by now that the standard of negligence under the FELA is *substantially more liberal* than that governing ordinary common law negligence actions." (emphasis added and citations omitted)); *see also Tufariello v. Long Island R.R.*, 458 F.3d 80, 87 (2d Cir. 2006) ("[A]n employer may be held liable under FELA for risks that would otherwise be too remote to support liability at common law." (internal quotations omitted)); *Ulfik v. Metro-North Commuter R.R.*, 77 F.3d 54, 58 n.1 (2d Cir. 1996) ("[N]umerous appellate courts, including ours, have construed

[FELA], in light of its broad remedial nature, as creating a relaxed standard for negligence . . . .").  Under FELA, "'the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played *any* part, *even the slightest*, in producing the injury or death for which damages are sought.'"  *Syverson*, 19 F.3d at 826 (quoting *Burns v. Penn Cent. Co.*, 519 F.2d 512, 514 (2d Cir. 1975)).

Applying these standards, LIRR focuses on the condition of the doorway itself, and argues that the doorway was not in any way defective or hazardous.  (Def. LIRR's Mem. of Law in Supp. of Mot. ("LIRR's Br.") at 4 ("[T]he record is silent on the nature of the alleged defect in the subject doorway/threshold.").)  LIRR further argues that even if a hazardous condition existed, LIRR had no notice of this condition.  (LIRR's Br. 4.)  Moreover, it argues, this accident was not foreseeable, as it was impossible for LIRR to predict that PSB or PSS would act negligently in failing to properly secure the stacked magazine bundles.  (LIRR's Br. 5.)

### 2.  Existence of a Hazardous Condition

The Court agrees with LIRR's contention that there is no evidence that the doorway itself was in some way defective.  However, LIRR's focus on the condition of the doorway alone is too narrow.  The broader question is whether, as a matter of law, a hazardous condition existed where Plaintiff was required by her work to use the same narrow doorway as vendors transporting heavy freight on wheeled carts.  The Court must assess this question in light of FELA's "relaxed standard for negligence," *Ulfik*, 77 F.3d at 58 n.1, and may grant summary judgment "only in instances where reasonable jurors could reach only one conclusion." *Williams*, 196 F.3d at 407.

Construing the facts liberally, as required by the statute, it cannot be said that no

reasonable jury could find that a foreseeable danger existed here.  *See id.* ("[F]actual issues must

be liberally construed [under FELA]." (quotations omitted)).  Based on the record, a jury could

find that Plaintiff was required to use this doorway to carry out her duties of employment

(Johnson Dep. 85:24-86:4); that the doorway was narrow (LIRR's 56.1 Stmt. Ex. H (noting

"narrow entry")); that the base of the doorway contained molding high enough to interfere with

the movement of a cart (*id.* Ex. G (noting that cart was pushed "hard" to overcome the molding));

that it was not unusual for vendors in Penn Plaza to transport freight so heavy that they required

the use of carts (Maldonado Dep. 27:11-20); that the doorway was the "only access at the time"

for vendors with deliveries (*id.* 17:20-18:2); and that at the time of the accident these conditions

had existed for over two months (Johnson Dep. 86:5-14 (stating that the single door was used

after September 11, 2001)).

Under these circumstances, the Court cannot conclude that there is no factual dispute as

to whether there existed a "potential hazard in the workplace." *Williams*, 196 F.3d at 406.

Rather, a reasonable jury could find that by requiring its employees to regularly share a single

narrow doorway with heavy, moving freight, LIRR failed to provide a safe workplace.  The Court

reaches this decision mindful of the Second Circuit's mandate that, "[a]s with all factual issues

under the FELA, the right of the jury to pass on [the hazardous workplace] issue must be liberally

construed." *Gallose v. Long Island R.R.*, 878 F.2d 80, 85 (2d Cir. 1989).

### 3.  Foreseeability

As noted above, to survive summary judgment in a FELA claim, Plaintiff must also

establish that "a particular danger was foreseeable." *Hairston v. Long Island R.R.*, No. 00 Civ.

7208, 2003 WL 21254196, at *5 (S.D.N.Y. May 30, 2003); *see also Syverson*, 19 F.3d at 826.

"[R]easonable foreseeability requires proof of actual or constructive notice to the employer of the defective condition that caused the injury." *Hairston*, 2003 WL 21254196, at *5. Here, LIRR argues that it had no notice of the defective condition because it was not foreseeable that the vendors transporting freight would act negligently and thereby injure Plaintiff.

As an initial matter, the record is clear that LIRR knew, or at least should have known, that its workers were required to come in close proximity to wheeled carts transporting heavy freight. During the deposition of Wilfred Maldonado ("Maldonado"), LIRR's Transportation Manager, Maldonado acknowledged that he knew that vendors with carts were routinely "about," and that the narrow doorway at issue was the "only access" for those vendors when they were making deliveries. (Maldonado Dep. 17:20-18:8, 27:11-20.) Maldonado also testified that these doors were "routinely used by Railroad employees." (*Id.* at 28:2-3.) Moreover, Maldonado's office was on the concourse floor of One Penn Plaza, and based on his deposition testimony, the inference can be drawn that Maldonado's duties regularly took him past the subject doorway, if not through it (*id.* at 14:6-8 ("I was walking towards my office . . . when I came upon the accident")). *See Williams*, 196 F.3d at 407 ("It is well-established . . . that under FELA the jury's power to draw inferences is greater than in common-law actions." (quotations omitted)).

LIRR argues, however, that even if it knew that its employees were required to share the narrow doorway with carts of freight, it could not have foreseen that the vendors moving that freight would act negligently. (LIRR's Br. 5.) But the negligent – and even the intentional – acts of others do not shield a defendant from liability when those negligent acts stem from a danger of which a defendant had notice. On this point, *Syverson* and *Burns v. Penn Cent. Co.*, 519 F.2d 512 (2d Cir. 1975), are instructive. In *Syverson*, Plaintiff was attacked and stabbed by a vagrant

while working in the defendant's rail yard.  19 F.3d at 825.  The defendant knew that vagrants sometimes wandered in the area, and that they occasionally committed vandalism and theft.  *Id.* at 826-27.  But because none had ever attacked a railroad employee, defendant argued that "no one could have foreseen the violence and harm that the trespasser inflicted."  *Id.* at 827.  Applying FELA's liberal standard of foreseeability, the *Syverson* court disagreed and held that the case had been wrongfully dismissed because it could not be said that there existed "absolutely no reasonable basis for a jury to find for the plaintiff."  *Id.* at 828.

*Burns* presents a similar scenario.  In *Burns*, the plaintiff was a railroad brakeman who was shot by a sniper.  519 F.2d at 513.  The shot was fired in an area from which rocks had previously been thrown at trains.  *Id.* at 513-14.  The Second Circuit held that "although the criminal nature of the act causing injury may well bear on the jury's assessment of the defendant's ability to foresee that injury of this type might result from its acts or omissions, *a jury is not constrained to find that harm caused by a third party's unlawful conduct was not foreseeable.*"  *Id.* at 514 (emphasis added).

Similarly, here, a jury is "not constrained" to find that a third party's negligence was not foreseeable where LIRR required its employees to regularly use the same narrow doorway as heavy, rolling freight.  Indeed, Plaintiff here makes a stronger case than plaintiffs in either *Syverson* or *Burns* because here Plaintiff's injury is precisely the type of injury that one would foresee when employees are required to work in close proximity to freight.  Accordingly, under these circumstances, and applying FELA's liberal standard for negligence, it cannot be said the

injury suffered by Plaintiff was unforeseeable as a matter of law.  *See Syverson*, 19 F.3d at 826.[2]
LIRR's Motion for Summary Judgment must therefore be denied.

C.  Defendants PSB and PSS

Plaintiff's claims against PSB and PSS are based in negligence.  (*See* Am. Compl. ¶¶ 11-
39.)  Under New York law, to establish negligence, Plaintiff must show "the existence of a duty,
that is, a standard of reasonable conduct in relation to the risk of reasonably foreseeable harm; a
breach of that duty and that such breach was a substantial cause of the resulting injury."  *Baptiste
v. N.Y. City Transit Auth.*, 814 N.Y.S.2d 136, 138 (App. Div. 2006) (citations omitted); *see also
Levine v. Sears Roebuck & Co.*, 200 F. Supp. 2d 180, 186 (E.D.N.Y. 2002) (setting forth New
York negligence standard).  Because Plaintiff is alleging that PSB and PSS are vicariously liable
for the actions of their employees, she must also satisfy the requirements of respondeat superior.
Respondeat superior attaches if the tortious act took place while the tortfeasor employee was
involved in activities that "advanced the employer's interest."  *Lippold v. Duggal Color Projects,
Inc.*, No. 96 Civ. 5869, 1997 WL 529014, at *1 (S.D.N.Y. Aug. 25, 1997); *see also Prignoli v.
City of New York*, No. 94 Civ. 4125, 1996 WL 340001, at *5 (S.D.N.Y. June 19, 1996) ("[T]he
employer cannot be held liable when the acts of the employee are outside the scope of
employment, or are done with a purpose foreign to the interests of the employer.").

Defendants PSB and PSS argue that Plaintiff has failed to satisfy her burden of

---

[2]The fact that Plaintiff's injury occurred on property that was not under LIRR's control
does not alter this conclusion:  "[A] railroad has the nondelegable duty to provide its employees
with a safe place to work even when they are required to go onto the premises of a third party
over which the railroad has no control."  *Shenker v. Balt. & Ohio R.R.*, 374 U.S. 1, 7 (1963);
*accord Salamon v. Motor Vessel Poling Bros. No. 11, Inc.*, 751 F. Supp. 343, 345 (E.D.N.Y.
1990).

establishing that:  1) Defendants' "employees were the operators of the magazine cart"; 2) that the "cart was owned and controlled by defendant[s]"; and 3) that "the cart was improperly or negligently stacked and/or secured."  (Mem. of Law in Supp. of Def. PSB and PSS Mot. for Summ. J. 3 ("PSB Defs.' Br.").)  In short, PSB and PSS argue that Plaintiff has not established that the operators of the cart acted negligently, and even if negligence is found, that Defendants are vicariously liable.

### 1.  Negligence

Plaintiff has produced sufficient evidence that a jury might find that the operators of the cart failed to exercise reasonable care and therefore acted negligently.  For the purposes of this motion, the record shows that two men were operating a cart that contained magazine bundles, each consisting of twenty to twenty-five magazines.  (Rahman Aff. ¶ 6; Eskalis' MTA Police Dept. Incident Rep. 2.)  The magazine bundles were stacked over 5'4" high (Johnson Dep. 92:23-93:2) and were not secured to the cart in any manner.  (*Id.* at 93:18-21; Rahman Aff. ¶ 3.)  The record further shows that when the operators of the cart reached the threshold of the doorway, they "yanked" the cart and pushed it "hard" in order to overcome the threshold of the doorway. (*Id.* at 18:4-15; Rahman Aff. ¶ 4.)  This caused the unsecured bundles to fall on Plaintiff, thereby injuring her.

Under these facts, and drawing all inferences in favor of Plaintiff, the Court cannot conclude, as a matter of law, that the two men operating the cart exercised reasonable care when they chose to move the cart through a crowded area while it was stacked high with heavy, unsecured freight.  Nor can the Court conclude that the cart operators displayed reasonable care when they yanked the heavily-laden cart over the molding in the doorway while Plaintiff stood

only two feet away.  A jury therefore will be allowed to decide these issues.

### 2.  Respondeat Superior

Plaintiff has also produced sufficient evidence such that a jury might find that PSB and

PSS are vicariously liable for the alleged negligence of the cart operators.  Defendants argue that

Plaintiff has produced no evidence that the operators were employed by either PSB or PSS.

(PSB Defs.' Br. 3, 15.)  This is simply not the case.  First, PSS admits in its Answer that one of

the cart operators, Uddin, was employed by PSS at the time that Plaintiff was injured.  (Answer

to Third Am. Compl. 3.)   Second, the security guard who witnessed the accident, Muhammed

Rahman, recognized both of the men operating the cart and identified them as employees of

PSB.[3]  (Rahman Aff. ¶ 3.)  Third, in a letter to opposing counsel dated March 8, 2005, counsel

for PSB acknowledged that "Suhail Ghani" and "Muhammed Akin Udin" were former

employees of PSB.  (Pl.'s Rule 56.1 Stmt. Ex. 5.)  Taking these facts together, a jury could

conclude that the cart operators were employed by either PSB or PSS at the time of the incident,

or even that the men were employed by both of these Defendants.

Moreover, a reasonable juror could conclude that, at the time that Plaintiff was injured,

the cart operators were engaged in acts that were within the scope of their employment with PSB

---

[3]PSB argues that Rahman's affidavit should not be credited because it conflicts with a statement that Rahman allegedly made to Metropolitan Transportation Authority Officer Michael Vicente ("Officer Vicente"), as memorialized in Vicente's November 21, 2001 Incident Report. (Mandelbaum Decl. Ex. F.)  Officer Vicente's report states that Rahman identified the cart operators as employees of Penn Books, a magazine vendor in One Penn Plaza that is unaffiliated with Penn Station Books.  (Id.; Stanziola Decl. ¶¶ 2-4.)  However, while this purported inconsistency in Rahman's statements is relevant to assessing Rahman's credibility, it is not a directly contradictory statement sworn to by Rahman himself.  Indeed, there is no indication that Rahman adopted the statements attributed to him by Officer Vicente.  Consequently, Officer Vicente's Incident Report at best raises an issue of fact that is properly decided by a jury.

or PSS.  *See Prignoli*, 1996 WL 340001, at *5 ("[T]he employer cannot be held liable when the

acts of the employee are outside the scope of employment, or are done with a purpose foreign to

the interests of the employer.").  When the incident took place, the two men were in the same

building as their alleged retail employers, and they were engaged in an activity commonly

associated with employment at a retail store, namely, the transportation of retail freight.

Furthermore, they were coming from an area that was locked with a key pad so as "to only allow

*employees* to be able to enter and exit."  (Johnson Dep. 86:18-23 (emphasis added).)  It is

therefore a reasonable inference – indeed, an obvious inference – that the cart operators were

acting within the scope of their employment when Plaintiff was injured.  *See Hunt v. Cromartie*,

526 U.S. 541, 553 (1999) ("Summary judgment . . . is inappropriate when the evidence is

susceptible of different interpretations or inferences by the trier of fact."); *Island Software &*

*Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 264 (2d Cir. 2005) (drawing inference in

favor of plaintiff at the summary judgment stage, even where that inference was not "the better of

the possible inferences that can be drawn").  Defendants have produced no evidence that would

undermine this inference.  Accordingly, summary judgment cannot be granted on this basis.

### III.  Conclusion

For the foregoing reasons, Defendants' Motions for Summary Judgment are DENIED.

The Clerk of the Court is directed to terminate the motions (Doc. Nos. 20, 22).


SO ORDERED.

Dated:          January  4  , 2007
                New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

15